ANN WALSH BRADLEY, J. (dissenting).
*805 ¶ 59 When a court issues a warrant without regard for any legislatively mandated statutory safeguards, the use of evidence discovered through execution of such a warrant calls into question the fairness of the process. "Public confidence in the fair and honorable administration of justice, upon which ultimately depends the rule of law," is a "transcending value at stake." Sherman v. United States, 356 U.S. 369, 380, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (Frankfurter, J., concurring).
¶ 60 As was explained in State v. Hess, 2010 WI 82, ¶¶ 64-65, 327 Wis. 2d 524, 785 N.W.2d 568, even though the purpose of the exclusionary rule is primarily to deter police misconduct, a "secondary consideration" of the rule is to preserve judicial integrity. I conclude that judicial integrity remains an independent basis for the application of the exclusionary rule and, like the circuit court, I would apply it here.
¶ 61 For well over a half century, the rationale of judicial integrity has coursed through exclusionary rule jurisprudence in both this court and the United States Supreme Court. In the seminal case of Terry v. Ohio, the United States Supreme Court wrote that in addition to deterring police misconduct, the exclusionary rule "also serves another vital function-'the imperative of judicial integrity.' " 392 U.S. 1, 12-13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (citing Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ).
¶ 62 Subsequently, the Supreme Court reaffirmed that although the primary purpose of the exclusionary rule is to deter police misconduct, judicial integrity is a "relevant, albeit subordinate factor" that may require exclusion of evidence in "unusual circumstances." United States v. Janis, 428 U.S. 433, 458 n.35, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) ; United States v. Leon, 468 U.S. 897, 921 n.22, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
¶ 63 Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), altered this analysis. In Davis, the Supreme Court departed from judicial integrity and determined that pursuant to the federal Constitution, the "sole purpose of the exclusionary rule is to deter misconduct by law enforcement." Id. at 246, 131 S.Ct. 2419.
¶ 64 However, this court need not follow the United States Supreme Court's departure. "[W]e retain the right to interpret our constitution to provide greater protections than its federal counterpart." State v. Dubose, 2005 WI 126, ¶ 41, 285 Wis. 2d 143, 699 N.W.2d 582. This court "will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizens' liberties ought to be afforded." State v. Knapp, 2005 WI 127, ¶ 59, 285 Wis. 2d 86, 700 N.W.2d 899 (quoting State v. Doe, 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977) ). To provide true meaning to our constitution's protections against unreasonable searches and seizures, it is appropriate to do so here.
¶ 65 There is ample support in our prior case law for maintaining judicial integrity as an independent basis for applying the exclusionary rule pursuant to the Wisconsin Constitution. In State v. Felix, an opinion decided post-Davis and based in part on the Wisconsin Constitution, this court referenced the dual purposes of the exclusionary rule, including judicial integrity. 2012 WI 36, ¶ 39, 339 Wis. 2d 670, 811 N.W.2d 775. Similarly, in Hess we referenced both the Fourth Amendment to the United States Constitution and *806 Article I, Section 11 of the Wisconsin Constitution.[1] See Hess, 327 Wis. 2d 524, ¶¶ 20, 33, 785 N.W.2d 568. Likewise, in State v. Eason, the court referred to the exclusionary rule's dual purpose of deterring police misconduct and ensuring judicial integrity while explicitly basing its conclusion on the Wisconsin Constitution. 2001 WI 98, ¶¶ 3, 31 n.10, 245 Wis. 2d 206, 629 N.W.2d 625.
¶ 66 The consideration of judicial integrity in the application of the exclusionary rule also fulfills the "important purposes" of "enabl[ing] the judiciary to avoid the taint of partnership in official lawlessness" and "assur[ing] the people-all potential victims of unlawful government conduct-that the government would not profit from its lawless behavior, thus minimizing the risk of seriously undermining popular trust in government." See Herring v. United States, 555 U.S. 135, 152, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (Ginsburg, J., dissenting) (quoting United States v. Calandra, 414 U.S. 338, 357, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (Brennan, J., dissenting) ); see also Robert M. Bloom & David H. Fentin, "A More Majestic Conception": The Importance of Judicial Integrity in Preserving the Exclusionary Rule, 13 U. Pa. J. Const. L. 47 (2010).
¶ 67 Eight years ago, Hess provided an instructive analysis of the judicial integrity consideration in applying the exclusionary rule. See Hess, 327 Wis. 2d 524, ¶¶ 63-67, 785 N.W.2d 568. "[J]udicial integrity is implicated when a judge issues a warrant that does not comply with statutory requirements and is not supported by the constitutionally required oath or affirmation." Id., ¶ 63. Further, "[t]he consideration of judicial integrity must take into account the nature of the defects in the warrant." Id., ¶ 66.
¶ 68 In Hess, a civil bench warrant issued for Hess's arrest because he failed to meet with the agent assigned to complete his pre-sentence investigation. Id., ¶ 8. The defects in Hess's warrant "were not technical irregularities or errors of judgment: The defendant's failure to cooperate with the agent in preparing a PSI was not a crime. It did not violate a court order, and it did not violate a condition of his bond." Id., ¶66.
¶ 69 Further we explained that "[t]he bench warrant civil that the court issued was void ab initio because it did not comply with any statute authorizing the court to issue a warrant. It was defective on its face because it was a civil warrant in a criminal case." Id."In short, the warrant was void ab initio because it was unauthorized and defective in nearly every respect." Id. For this reason, we concluded that "[w]hen fundamental constitutional and statutory requirements for issuing a warrant are completely absent, the good-faith exception cannot save the resulting unconstitutionally obtained evidence." Id., ¶67.
¶ 70 This case turns on similar concerns. The Ashland County Circuit Court issued an arrest warrant for Kerr because he had not paid a forfeiture imposed for disorderly conduct. Majority op., ¶ 8. Wisconsin Stat. § 800.095 provides specific procedures for the filing of such a warrant. The *807 Ashland County Circuit Court followed none of them, yet issued the warrant anyway.[2]
¶ 71 Accordingly, the Ashland County Circuit Court had no authority to issue the warrant. It was, like the warrant in Hess, "void ab initio because it was unauthorized and defective...." See Hess, 327 Wis. 2d 524, ¶ 66, 785 N.W.2d 568. As in Hess, maintaining the integrity of the judicial process demands suppression of the evidence here.
¶ 72 The Bayfield County Circuit Court agreed in its ruling suppressing the evidence. In its thoughtful written decision, the circuit court stated: "There are obvious reasons why judicial integrity is a valid consideration. While there is no reason in this case to assume intentional malfeasance on the issuing court, the record from the Ashland County case shows an institutional or administrative disregard for the law governing civil commitments."
¶ 73 Using judicial integrity as the sole basis for the application of the exclusionary rule is admittedly only proper in "unusual circumstances." See Hess, 327 Wis. 2d 524, ¶ 64, 785 N.W.2d 568 (citing Leon, 468 U.S. at 921 n.22, 104 S.Ct. 3405 ). The warrant here was issued without regard for the mandatory procedural safeguards of Wis. Stat. § 800.095. Such a situation presents the "unusual circumstances" necessary to suppress evidence based solely on the concern for judicial integrity.
¶ 74 For the foregoing reasons, I respectfully dissent.
¶ 75 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

Wis. Const. art. I, § 11 (emphasis added).

State v. Kriegbaum, 194 Wis. 229, 232, 215 N.W. 896 (1927) ; State v. Hess, 2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568.